IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL K.,[1]                                    Case No. 1:19-cv-00930-SB

          Plaintiff,                       **OPINION AND ORDER**

     v.

ANDREW M. SAUL, Commissioner of
Social Security,

          Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

      Michael K. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of his applications for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3). For the reasons explained below, the Court reverses the Commissioner's

decision and remands this case for further proceedings.

_____

     [1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).[2] Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

///

///

///

---

[2] The Commissioner appears to suggest that the applicable standard of review is the substantial evidence standard set forth in *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). In the Ninth Circuit, however, not only must the Court review for substantial evidence under *Biestek*, but it must also review the ALJ's decision for harmful legal error. *See, e.g.*, *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021); *Ford v. Saul*, 950 F.3d 1141, 1153-54 (9th Cir. 2020) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) and *Biestek*, 139 S. Ct. at 1154)).

## BACKGROUND

### I.    PLAINTIFF'S APPLICATIONS

Plaintiff filed his DIB and SSI applications on May 21, 2015. (Tr. 109-12.) He was born in December 1959, making him fifty-four years old on October 30, 2014, the alleged disability onset date. (Tr. 83, 113.) Plaintiff graduated from high school. (Tr. 251.) He has past relevant work experience as an automobile salesperson and finance manager. (Tr. 44.) Plaintiff's applications allege disability due to: "heart, pericarditis, PTSD [posttraumatic stress disorder], anxiety, deg[enerative] disc disease, neck, ADHD [attention deficit hyperactivity disorder], OCD [obsessive compulsive disorder], terretts [sic] with ticks, gastritis, esophagitis, edema, ongoing gall bladder issues, IBS [irritable bowel syndrome], [and] glaucoma 20 years/gotten worse." (Tr. 83-84, 96-97, 113-14, 127-28.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on September 28, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 164-66.) Plaintiff and a vocational expert ("VE") appeared and testified at a hearing on March 30, 2018. (Tr. 53-82.) On May 22, 2018, the ALJ issued a written decision denying Plaintiff's applications. (Tr. 34-46.) On April 22, 2019, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-4.) Plaintiff now seeks judicial review of the ALJ's decision.

### II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social

Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five

steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2)

whether the claimant has a severe impairment; (3) whether the impairment meets or equals a

listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether

the claimant is capable of performing other work that exists in significant numbers in the

national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps.

*Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the

burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137,

140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where

the Commissioner must show the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner

fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations

omitted).

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is

disabled. (Tr. 36-44.) At step one, the ALJ determined that Plaintiff met the insured status

requirements for DIB and had not engaged in substantial gainful activity since October 30, 2014,

the alleged disability onset date. (Tr. 36.) At step two, the ALJ determined that Plaintiff has the

following severe impairments: (1) status post two coronary bypass surgeries, (2) pericarditis, and

(3) degenerative disc disease of the cervical spine. (Tr. 37.) At step three, the ALJ concluded that

Plaintiff does not have an impairment that meets or equals a listed impairment. (Tr. 40.) The ALJ

then concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work,

subject to these limitations: Plaintiff (1) can occasionally climb ladders, ropes, and scaffolds; (2) can occasionally stoop, kneel, crouch, and crawl; and (3) is limited to occasionally bilateral overhead reaching. (Tr. 41.) At step four, the ALJ concluded that Plaintiff is a capable of performing his past work as an automobile salesperson and finance manager. (Tr. 44.) Therefore, the ALJ determined that since his alleged disability onset date, Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 46.)

## DISCUSSION

In this appeal, Plaintiff argues that the Commissioner erred by failing to find his mental impairments severe at step two of the sequential evaluation process and by including no mental functional limitations in the RFC. Plaintiff asserts the error is harmful because any severe mental impairment would preclude his ability to perform past work and require a finding of disability under the Grids. Plaintiff attributes the ALJ's failure to find a severe mental impairment at step two to the improper evaluation of Plaintiff's subjective symptom allegations and the opinions of the treating and examining medical providers of record.

## I.     STEP TWO

Step two of the sequential evaluation process is a *de minimis* procedural device used to screen out baseless disability claims. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted). To proceed in the sequential evaluation process, a claimant must provide evidence of one or more "severe" impairments which establish more than a minimal effect on the claimant's ability to perform normal work activity. 20 C.F.R. §§ 404.1512, 416.912; *see Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An ALJ must consider the combined effect of all the claimant's impairments on his or her ability to function. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Where an ALJ erroneously fails to find one or more severe impairments at step two, the error may be harmless if the ALJ nevertheless considers the non-

severe impairments in making the RFC finding. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Plaintiff asserts the ALJ committed harmful error by failing to find any severe mental impairment(s) at step two, by improperly evaluating (1) his subjective symptom testimony, and (2) the medical source evidence of record, both of which precipitated further error.

## II.    SUBJECTIVE SYMPTOM TESTIMONY

### A.    Symptom Allegations

Plaintiff completed an adult function report as part of the application process, dated July 25, 2015. (Tr. 265-72.) He explained that his ability to work is limited by a number of factors: reduced attention span and ability to focus, need for significant down-time after completing "easy" tasks, high levels of anxiety, chronic fatigue, physical pain, heart palpitations, digestive problems, and difficulty sleeping. (Tr. 265-66.)

Plaintiff asserted he can perform a range of activities of daily living ("ADL"). These include personal hygiene, "light chores," preparing simple meals, watching television, attending medical appointments, using social media, paying bills, taking "short walks," and caring for his cats. (Tr. 266.) He is also able to provide care for his disabled wife, which includes preparing simple meals and picking up her medications. (*Id.*) He asserted that it takes him two-to-three times as long it should to prepare meals. (Tr. 267.) Plaintiff identified a range of chores he can perform, including light cleaning, laundry, "very light" yardwork, using the dishwasher, driving, and shopping for groceries and personal items two-to-three times each week. (Tr. 268.) He visits a close friend of his occasionally, and occasionally uses his smart phone to converse with family or friends. (Tr. 269.) Plaintiff described that he is less interested in hobbies and pleasurable pursuits he used to do in the past, such as reading, hiking, camping, seeing movies and plays,

playing sports, and visiting friends. (*Id.*) He indicated he has stopped "pretty much all social activities" because he has a "very low tolerance level" for family, friends, and neighbors. (Tr. 270.)

In terms of physical functionality, Plaintiff indicated he can lift twenty pounds, walk half a mile before needing to stop to rest, pay attention for five to fifteen minutes, sometimes finishes what he starts, and he can follow written and oral instructions if repeated. (*Id.*) He emphasized that he handles stress and changes in his routine "very poorly." (Tr. 271.) He explained that he has a fear of "losing it" mentally, becoming physically incapacitated, and that he fears losing loved ones. (*Id.*) Finally, Plaintiff described that he suffers from worsening depression, but cannot take medications due to side effects, and he feels that physical therapy has exacerbated his physical pain. (Tr. 72.)

Plaintiff's hearing largely covered the same ground. (*See* Tr. 54-82.) Plaintiff's attorney asserted that Plaintiff's physical impairments have triggered severe anxiety. (Tr. 57.) The attorney also explained that Plaintiff's anxiety arises from dealing with his wife's and son's mental health issues. (Tr. 58.) However, Plaintiff testified that the situational stressors involving his wife and son have "dramatically reduced." (Tr. 64.) Plaintiff further testified that his depression and anxiety are his primary barriers to employment. (Tr. 62.) He stated that he was unemployed from 2008 until 2012 due to mental health issues. (Tr. 63.) Upon returning to work, he soon began experiencing heart problems that resulted in open-heart surgery, which in turn spawned other physical problems. (*Id.*) In response to questions from the ALJ about past work experience, Plaintiff described that in 2015 he reviewed a movie script for his brother, a Hollywood producer. (Tr. 59-60.) He explained that he did not feel he would be able to maintain a full-time job due to excessive absences caused by anxiety, depression, and fatigue. (Tr. 67, 69.)

In the past, Plaintiff attempted to earn money by selling items in online auctions, but he no longer has the focus or perseverance to do so. (Tr. 68.) Finally, Plaintiff described that he has engaged in physical therapy with a trainer but was only able to attend a few of the dozen or so classes because he was unable to follow through. (Tr. 73-74.)

### B.    Analysis

Where, as here, there is no evidence of malingering and an ALJ determines that a claimant has provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged, the ALJ is required to provide clear and convincing reasons for discrediting a claimant's symptom testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ may reject a claimant's subjective symptom testimony by finding that the claimant's ADLs: (1) are inconsistent with the functional limitations alleged, or (2) meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ determined that Plaintiff's ADLs were inconsistent with his symptom testimony. (Tr. 43-44.)

For example, the ALJ found that Plaintiff downplayed activities he performed at the YMCA when he testified that he could only follow through with two courses. (Tr. 43.) The ALJ found Plaintiff's testimony inconsistent with other evidence in the record that he reported going to the training courses two to four times each week, as well as Tai Chi and yoga classes. (Tr. 38, 43; *see* Tr. 1559, 1566, 1573, 1576, 1580-81, 1583.) Although this is a discrepancy, the discrepancy is not material to Plaintiff's symptom allegations, and the ALJ did not appear to consider that Plaintiff's provider prescribed the classes specifically to treat his anxiety. (*See* Tr. 1560, 1564-66.) Discounting Plaintiff's testimony based on his ability to participate in prescribed mindfulness and other courses to treat his anxiety is not a clear and convincing reason to question the severity of his alleged symptoms. Finally, to the extent the ALJ set out to discount

Plaintiff's character or truthfulness, the rationale is invalid. *See* Social Security Ruling ("SSR") 16-3p, *available at* 2017 WL 5180304, at *11 (Oct. 25, 2017).

The ALJ also found that Plaintiff's relatively robust activities were consistent with "a fairly normal level of functioning throughout a typical day," including the ability to care for his disabled wife, which consisted of her medication management, helping her bathe and dress, preparing simple meals for her, and taking her to appointments. (Tr. 44.) However, the Ninth Circuit has been clear that one's ability to perform basic self-care—or even basic care for others—does not necessarily mean that a claimant could perform workplace activities outside of the home on a regular and continuing basis. *See* Webb, 433 F.3d at 689 (holding that the ability to do household chores is not inconsistent with disability); *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (holding that the ability to perform childcare is not inconsistent with disability). Indeed, Plaintiff consistently stated that although he can perform household chores, he does them in only short stints. (Tr. 1023.) In addition, Plaintiff can independently perform personal hygiene, but he bathes only twice each week and brushes his teeth only every other day. (Tr. 1022.) Plaintiff's treating providers also confirmed that Plaintiff's symptoms impede his personal hygiene tasks. Further, Plaintiff's ability to use basic digital technology for email or texting does not necessarily translate to his ability to function productively in a competitive workplace outside of his home. The Court finds that the ALJ identified no ADLs that were inconsistent with Plaintiff's testimony.

The ALJ also found Plaintiff's complaints were inconsistent with the objective medical evidence, with particular attention to Plaintiff's ability to concentrate. (Tr. 38.) In support of his finding, the ALJ noted that Plaintiff's attention and concentration limitations were no more than mild, based on reports by his medical providers. (*Id.*) (citing Tr. 869, 1022, 1513-14, 1518, 1603,

1610). However, many other medical records reflect that treating providers found Plaintiff significantly impaired by his anxiety, particularly in the areas of attention and concentration. (*See, e.g.*, Tr. 1028 (anxiety impacts decision making), 1031 (persistent anxiety), 1034 (dramatic language, "hyperfocusing" on body symptoms), 1037 (anxious affect), 1467 ("very anxious," dramatic language), 1471 ("needs to see" mental health provider), 1474 (anxiety impacting decision making), 1480 (needs medical management and counseling), 1488 (marked limitation in attention and concentration, ability to complete normal workday or workweek), 1490 (ADLs including personal grooming habits impacted by anxiety symptoms), 1496 (obsessive, ruminative), 1497 ("difficulty concentrating or completing a thought"), 1498 (meets criteria for anxiety disorder including difficulty concentrating, irritability, muscle tension, sleep disturbance), 1520 (anxiety impacting quality of life), 1538 (anxiety symptoms interfere with ADLs), 1542 (difficulty concentrating or completing a thought), 1543 (anxiety impedes ability to work, perform household chores, personal grooming, paying bills on time), 1586 (marked limitations in attention and concentration, ability to complete normal workday or workweek), 1587 (symptoms of uncontrollable worry, lethargy, impaired ADLs, "brushing his teeth has become a struggle"), 1605 (ongoing anxiety issue), 1623 (anxiety disorder including symptoms of restlessness, fatigue, difficulty concentrating, irritability, muscle tension, and sleep disturbance), 1630 (marked limitation in concentration, persistence or pace and adaptive skills), 1632 (anxiety impacts activities of daily care, focus, ability to be productive), 1643 (symptoms impact ADLs).)

Although the ALJ determined, and the Commissioner argues, that Plaintiff's providers were overly reliant on Plaintiff's own symptom reports, the Ninth Circuit has established that psychological clinical techniques should not be disregarded simply for that reason. *See Buck v.*

*Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (holding that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness"). In any event, inconsistency with objective medical evidence alone is insufficient to reject a claimant's symptom allegations. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Because the ALJ failed to provide clear and convincing reasons to discredit Plaintiff's mental health symptoms, the ALJ erred in his evaluation of the severity of Plaintiff's anxiety at step two of the sequential evaluation process.

## III.    MEDICAL SOURCE EVIDENCE

### A.    Legal Standards

The ALJ's step two finding here was also based on the ALJ's evaluation of the medical source opinions of record. In the Ninth Circuit, the ALJ must consider the acceptable medical source opinions of record and assign weight to each. 20 C.F.R. §§ 404.1527(c), 416.927(c). In this respect, an ALJ is responsible for resolving conflicts and ambiguities in the medical evidence. *Reddick*, 157 F.3d at 722. To reject the contradicted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The opinion of a non-examining medical consultant alone does not constitute substantial evidence sufficient to reject the opinion of a treating or examining physician. *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Reddick*, 157 F.3d at 725).

///

///

**B.     Analysis**

**1.     Examining Medical Source Dr. Shields**

Dr. Shields performed a psychological examination and evaluation in August 2015. (Tr. 1019-24.) Dr. Shields conducted a clinical interview, reviewed medical records (including chart notes from Sarah Verducci and Ilene Goldman), administered a mental status examination, and assessed an "index of independence in [ADLs]." (Tr. 1019.) Ultimately, the doctor diagnosed Plaintiff with generalized anxiety disorder, panic disorder, unspecified anxiety disorder with features of PTSD, Tourette's disorder, and "multiple medical complaints." (Tr. 1023.)

Plaintiff's mental status exam reflected adequate hygiene and grooming; normal speech; euthymic mood and appropriate affect; adequate alertness, orientation, attention and concentration, and memory; and adequate cognition, reasoning, and perception. (Tr. 1022.) Plaintiff's ADL assessment generally tracked his function report, identifying independent self-care tasks, ability to prepare simple meals, independent driving, somewhat limited performance of household chores, and independent management of his finances. (Tr. 1023.) Plaintiff reported his typical day consisted of feeding his cats, emptying the dishwasher, helping his wife dress and take her medications, watching television, and making simple meals. (*Id.*)

Dr. Shields opined that Plaintiff could understand, remember, and carry out short and simple instructions, and "intellectually" understand detailed instructions, but further noted that Plaintiff's ability to do so could be disrupted by anxiety, which suggests his ability to do so on a regular and continuing basis is somewhat impaired. (*Id.*) Dr. Shields also concluded Plaintiff's attention, persistence, and pace might be affected by anxiety, low stress tolerance, and intermittent panic attacks, although he did not detect indications of significant social dysfunction. (*Id.*) Dr. Shields concluded that Plaintiff's prognosis was good if he were able to better control his anxiety. (*Id.*)

The ALJ summarized Dr. Shields' opinion and accorded it "some weight." (Tr. 39-40.) The ALJ explained the mental status exam was consistent with other unremarkable examinations in terms of attention, concentration, and memory. (Tr. 39.) The ALJ reiterated that Plaintiff's relatively normal ADLs suggested Plaintiff's anxiety "seemed to be well managed." (Tr. 40.) The ALJ noted that Plaintiff's anxiety appeared to be situational rather than chronic and found Dr. Shields' "good" prognosis consistent with that of the treating provider. (*Id.*)

Plaintiff contends that the ALJ failed properly to account for Dr. Shields' statement that he "may struggle with remembering detailed instructions at times if his anxiety is significantly elevated and disrupting his focus[,]" and his conclusion that Plaintiff's prognosis was favorable "if he can get his anxiety under better control." (Tr. 1023.) Plaintiff further contends the ALJ mischaracterized Dr. Shields' opinion as suggesting that Plaintiff's anxiety "seemed to be well-managed." (Tr. 40.)

The Court agrees that the ALJ erred in the evaluation of Dr. Shields' opinion, which impacted the ALJ's finding at step two that Plaintiff's anxiety is not a severe impairment. The threshold for finding an impairment severe is low: it is the *de minimis* screening device for baseless claims, and a severe impairment (singly or in combination with other impairments) must simply have "more than a minimal effect on the person's physical or mental ability to perform basic work activities." SSR 85-28, *available at* 1985 WL 56856, at *3 (Jan. 1, 1985); *see also Webb*, 433 F.3d at 687 (noting that the court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the plaintiff] did not have a medically severe impairment or combination of impairments").

Considered in combination, Dr. Shields' conclusions that Plaintiff may struggle remembering detailed instructions when his anxiety is elevated and his prognosis was good *if* he

can get his anxiety under better control support a finding that his mental impairments cause more than a minimal effect on Plaintiff's ability to perform normal work activities.[3] Dr. Shields' findings do not reasonably suggest that Plaintiff's anxiety is well-controlled. As summarized in the previous section, the medical opinion evidence demonstrates that Plaintiff's anxiety was persistent over the adjudicative period and had more than a minimal effect on his ability to perform in a competitive workplace. (*See, e.g.*, Tr. 1028, 1031, 1034, 1037, 1467, 1471, 1474, 1480, 1488, 1490, 1496-98, 1520, 1538, 1542-43, 1586-87, 1605, 1623, 1630, 1632, 1643.) As such, in the context of the step two severity determination, the ALJ erred in failing to provide specific and legitimate reasons to reject Dr. Shields' opinion that Plaintiff is unable to remember more than simple instructions, "may struggle" to understand detailed instructions when his anxiety level is high, and his prognosis is favorable only if Plaintiff is able to control his anxiety. (Tr. 1023.)

The Commissioner maintains that where "the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Here, however, the ALJ did not explain why he rejected Dr. Shields' opinions regarding Plaintiff's limitations to remember no more than simple instructions, nor reasonably support his conclusion that Plaintiff's anxiety was

---

[3] Dr. Shields' opinion that Plaintiff is unable to remember more than "short and simple instructions," and that his ability to understand detailed instructions on a regular and continuing basis may be occasionally impaired, is material because the ALJ found Plaintiff was not disabled by virtue of his ability to perform his past relevant work as a car salesperson (GED Reasoning Level 4) and financial manager (GED Reasoning Level 5), and both positions require the ability to do so (Tr. 45). *See* Appendix C – Components of the Definition Trailer, *Dictionary of Occupational Titles* ("DOT") Fourth Edition, Revised 1991, *available at* 1991 WL 688702 (Jan. 1, 2016) (GED Reasoning Level 4: "[i]nterpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form[]"; GED Reasoning Level 5: "[i]nterpret an extensive variety of technical instructions in mathematical or diagrammatic form . . . [d]eal with several abstract and concrete variables[]").

so well-controlled it did not more than minimally impact his ability to perform—on a sustained

basis—abilities required by his past relevant work. For these reasons, the ALJ's evaluation of Dr.

Shields' opinions were based on legal error and not supported by substantial evidence.

### 2.    Treating Medical Sources

Several medical sources of record treated Plaintiff, including therapists Sara Verducci

and Ilene Goldman, and Drs. Wendy Schilling, John Delgado, and Robert Norvich. Of the

medical sources of record, Ms. Verducci appears to have had the longest treatment relationship

with Plaintiff. She began treating Plaintiff in 2015 for "anxiety, trauma recovery, and symptoms

of depression." (Tr. 1632.) The record includes Ms. Verducci's chart notes of Plaintiff's

treatment, as well as three function-by-function assessments of his mental limitations in May

2016, March 2017, and December 2017. (Tr. 1488-91, 1586-88, 1618-32.)

Each of Ms. Verducci's assessments reflects significant mental functional limitations. For

example, in 2015, Ms. Verducci assessed "marked" limitations in the ability to: (1) maintain

attention and concentration; (2) perform activities within a schedule and maintain adequate

attendance and punctuality; (3) sustain an ordinary work routine; (4) work in coordination with

and proximity to others without distraction; (5) complete a normal workday and workweek and

perform at a consistent pace without interruptions by mental health symptoms; (6) respond

appropriately to changes in the work setting; and (7) set realistic goals or make workplace plans

independently. (Tr. 1488-89.) She indicated "moderate" limitations in numerous other workplace

functions. (*Id.*) Ms. Verducci listed Plaintiff's symptoms as racing heart, shortness of breath,

"uncontrollable" fear and worry, disturbed sleep, lethargy, and inability to concentrate.

(Tr. 1490.) She explained Plaintiff is easily "sidetracked by environmental stimulations," and

ADLs such as paying bills, personal grooming, and his "engagement in meaningful activities"

was "greatly impacted by these symptoms." (*Id.*) Ms. Verducci indicated Plaintiff was

undergoing therapy for Generalized Anxiety Disorder and Adjustment Disorder with Depressed Mood. (*Id.*)

In March 2017, Ms. Verducci completed a second function-by-function mental health assessment. She indicated marked limitation in nearly all the mental functions previously identified as such. (Tr. 1586-87.) Ms. Verducci also identified the same diagnoses. (Tr. 1587.) She explained that Plaintiff experienced several recent traumatic experiences leading to excessive worry and lethargy, and ADLs such as brushing his teeth had become a struggle for Plaintiff. (*Id.*)

In December of the same year, Ms. Verducci completed another functional assessment. She indicated Plaintiff's depressive disorder symptoms included depressed mood, diminished interest in activities, appetite disturbance, psychomotor agitations, decreased energy, feelings of guilt or worthlessness, difficulty thinking or concentrating, and thoughts of death or suicide. (Tr. 1621.) Regarding anxiety disorder, Dr. Verducci identified the following symptoms: restlessness, fatigue, concentration difficulties, irritability, muscle tension, and sleep disturbance. (Tr. 1623.) She also identified symptoms of Obsessive-Compulsive Disorder, neurodevelopmental disorders, and trauma-related disorders. (Tr. 1623, 1627, 1629.) Once again, Ms. Verducci identified numerous functional areas with marked limitations: (1) understanding, remembering, or applying information; (2) concentration, persistence, or pace; and (3) adaptive skills. (Tr. 1630.) She explained that Plaintiff's mental health symptoms impact his ability to perform self-care, focus and complete tasks, follow through with social activities, learn new things, and "be productive during the day." (Tr. 1632.)

The ALJ assigned little weight to Ms. Verducci's opinions. (Tr. 40.) He explained that despite Ms. Verducci's opinion that Plaintiff's attention and concentration limitations were

"marked," the objective record demonstrated Plaintiff often presented within normal limits. (*Id.*) However, for the same reasons described above regarding Plaintiff's subjective symptom complaints and the ALJ's erroneous interpretation of Dr. Shields' opinion as reflecting no more than minimal impairment in remembering more than simple instructions, the ALJ's reasoning for rejecting Ms. Verducci's opinions regarding attention and concentration is insufficient in the context of considering whether Plaintiff's mental impairment is severe at step two, considering that her assessment is based at least in part on her own clinical observations.[4] *See Buck*, 869 F.3d at 1049 (holding that a patient's symptom reports and a provider's clinical observations are components of "psychiatric methodology").

The ALJ also rejected Ms. Verducci's opinion by finding that her assessment that Plaintiff experiences trouble with personal hygiene, such as brushing his teeth, was inconsistent with her progress notes describing his hygiene as "neat and clean" and "good." (Tr. 40.) This purported inconsistency does not meet the specific-and-legitimate standard because neither Plaintiff nor Ms. Verducci asserted Plaintiff is unable to perform hygiene tasks such as brushing his teeth. To the contrary, Plaintiff explained he can brush his teeth, but does so only every other day, and bathes only twice per week. (Tr. 1022.) Ms. Verducci did not state that Plaintiff is wholly unable to brush his teeth, but rather that brushing his teeth and other ADLs have "become a struggle" due to "uncontrollable worry" and "increased lethargy." (Tr. 1587.) In context, the

---

[4] Indeed, although Ms. Verducci is a non-acceptable medical source under the guidelines in effect at the time of Plaintiff's initial applications, a non-acceptable treating source opinion may be entitled to more weight that an acceptable source because of the nature of the treatment relationship. *See* 20 C.F.R. §§ 404.1527(c)(2)(i-ii), 416.1527(c)(2)(i-ii) (stating that factors for evaluating treatment relationship include duration and frequency of examinations, and nature and extent of treatment relationship, area of medical source's expertise); SSR 06-03p, *available at* 2006 WL 2329939, at *5 (Aug. 9, 2006) (stating that the opinion of a non-acceptable medical source may outweigh that of an acceptable medical source).

fact that Plaintiff presents with "adequate" or "good hygiene" at a glance is not inconsistent with his own allegations or Ms. Verducci's statement that maintaining hygiene is a struggle due to his anxiety symptoms. The ALJ's rationale is not a valid reason to reject the opinion of the mental health provider with the most familiarity and longitudinal treatment record with Plaintiff.

Importantly, Ms. Verducci's opinion that Plaintiff's mental impairments cause more than a minimal impact on his functionality is consistent with those of other medical sources of record. For example, Ms. Verducci's December 2017 assessment is co-signed by treating physician Dr. John Delgado. (Tr. 1618.) The assessment indicates Plaintiff meets three mental impairment listings (for depression, anxiety and compulsive disorders, and trauma and stress disorders), with symptoms including marked limitations in understanding, remembering, or applying information; concentration, persistence, or pace; and adaptive ability. (Tr. 1630.) The ALJ rejected Dr. Delgado's opinion for the same reasons the ALJ rejected Ms. Verducci's opinion, namely, that the opinion is overly reliant on subjective symptom reports and inconsistent with normal examination findings in memory and concentration. (Tr. 40.) Under *Buck*, the ALJ's rationale is insufficient, particularly as to the issue of whether the mental impairments have any more than minimal functional impact. In other words, although the ALJ may have determined Plaintiff's symptoms were not marked, the ALJ failed to provide specific and legitimate reasons to find the impairments were no more than mild. In the context of the step two analysis and based on the record as a whole, the ALJ's rationale is insufficient.

Additionally, in March 2015 treating clinician Ilene Goldman determined Plaintiff met "eight out of the nine symptoms of trauma . . . and also meets criteria for generalized anxiety disorder[.]" (Tr. 1498.) Treating physician Dr. Robert Norvich indicated Plaintiff's symptoms were "impacting functioning and quality of life" and affected his personal judgment, and

assessed "moderate to marked" anxiety. (Tr. 1518, 1520.) The ALJ failed to reject either Ms. Goldman's or Dr. Norvich's opinions, which alone constitutes error. *Garrison*, 759 F.3d at 1012-13 (finding that an ALJ errs by ignoring a medical source opinion). The error is harmful because the opinions undermine the ALJ's finding that Plaintiff's mental impairments are not severe. *See Webb*, 433 F.3d at 687.

For these reasons, the ALJ's evaluation of the medical opinion evidence was based on legal error and not supported by substantial evidence.

## IV.    HARMFUL ERROR

Although step two errors are harmless where an ALJ nevertheless considers the impairments in crafting the RFC, here the ALJ did not incorporate any mental limitations in Plaintiff's RFC. Therefore, the Court finds that the ALJ's failure meaningfully to evaluate Plaintiff's mental impairments at step two was not harmless error.

## V.    REMEDY

Plaintiff argues that the Court should credit the medical opinions as true, find one or more of Plaintiff's mental impairments severe, and conclude that Plaintiff is disabled. (Pl.'s Br. 20-25.) Plaintiff correctly points out that once he turned 55 years old, the regulations require a disability finding if he cannot return to his prior work and if his skills are not readily transferable to a significant range of semi-skilled or skilled work within his functional capacity. (Pl.'s Br. at 22; *see also Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990) ("Accordingly, it is not enough that persons of advanced age are capable of doing unskilled work; to be not disabled, they must have acquired skills from their past work that are transferable to skilled or semiskilled work." (citing 20 C.F.R. § 404, Subpart P, App. 2, Rules 201.04–.08 (Table No. 1) and 20 C.F.R. § 404.1568(d))). However, although the VE identified unskilled occupations as those "most suitable" for Plaintiff, neither the VE nor the ALJ addressed whether Plaintiff's skills are readily

transferable to any semi-skilled or skilled occupations. (*See* Tr. 77, "Would there be any jobs in the national economy such an individual could perform? A. It would be my opinion that [the] position that would be *most suitable* to the job is a janitor, cleaner, which is an unskilled job, light, unskilled. . . . [Also a] position such as an office helper, such as sorting mail[.] . . . And I have to think of a third one, so hold on one moment. A position such as an advertising materials distributor [INAUDIBLE] at residential facilities. This would [also] be an example[.]") (emphasis added). Therefore, even if the Court were to credit the medical opinion evidence as true and find that Plaintiff cannot perform his past relevant work, further proceedings are necessary to determine if Plaintiff's skills are transferable to skilled or semiskilled work. *See Barnes v. Berryhill*, 895 F.3d 702, 708 (9th Cir. 2018) ("[T]he Commissioner argues that the VE's testimony was sufficient to show Barnes had the skills to perform the semi-skilled jobs identified. However, the VE gave no testimony whatsoever regarding Barnes's skills or their transferability. Assuming the VE took transferable skills into account is precisely what SSR 82-41 prohibits, for the explicit reason that it makes the ALJ's Step Five determination unreviewable.") (citing SSR 82-41, 1982 WL 31389, at *7).

For the reasons stated herein, remand is necessary to allow the ALJ to (i) reevaluate the medical opinion evidence and Plaintiff's symptom testimony; (ii) determine if any of Plaintiff's mental impairments are severe; (iii) reformulate Plaintiff's RFC to reflect his mental impairments; and (iv) determine if Plaintiff can return to his past work, and if not, if his skills are transferable to any semi-skilled or skilled occupations.

///

///

///

**CONCLUSION**

For the reasons stated, the Court REVERSES the Commissioner's decision and

REMANDS this case for further proceedings.

**IT IS SO ORDERED.**

DATED this 19th day of April, 2021.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 21 – OPINION AND ORDER